IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    vs.<br><br>HOWARD B. ROSFELD and PHYLLIS H. ROSFELD, as Trustees of the Rosfeld Living Trust Dated October 29, 2003,<br><br>        Defendants. | Civ. No. 21-00269 JMS-RT<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 20 |

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, ECF NO. 20**

**I.  INTRODUCTION**

Plaintiff Allstate Insurance Company ("Plaintiff" or "Allstate") moves for summary judgment, seeking an affirmative declaration that it owes no duty to defend or to indemnify its insureds, Defendants Howard B. Rosfeld and Phyllis H. Rosfeld, as Trustees of the Rosfeld Living Trust Dated October 29, 2003 ("Defendants" or "the Rosfelds"), against a pending underlying federal court action, *Wilson v. Rosfeld et al.*, Civ. No. 21-00115 JAO-RT (D. Haw. filed Feb. 24, 2021) ("the underlying action").  Allstate also seeks summary judgment as to Defendants' counterclaims, contending that there is no genuine issue of material

fact that it is not liable for bad faith, breach of contract, or related counterclaims. Based on the following, the court GRANTS Allstate's Motion in full.

For several reasons, Allstate's homeowners insurance policy does not require a defense of the underlying action. First, the underlying action raises no potential for "bodily injury" as defined in the policy. Second, there is no potential for covered "property damage" as required in the policy. Third, the underlying action is not an "occurrence," as there was no "accident" under the terms of the policy. Moreover, the policy also excludes coverage for bodily injury that was "expected or intended by the insured." Nor does Allstate have any duty to cover claims for equitable relief or punitive damages.

For the same reasons, Allstate's personal umbrella policy—with nearly identical definitions of "bodily injury," "property damage," and "occurrence" as in the homeowners insurance policy, and with several applicable exclusions—does not require a defense.

Finally, Allstate is entitled to summary judgment as to the counterclaims. There was no breach of contract, and there is no evidence of bad faith, or unfair or deceptive acts or practices.

///

///

## II. <u>BACKGROUND</u>

### A.   Allstate's Homeowners Policy

The Rosfelds are named insureds under an Allstate homeowners policy covering a policy period from August 3, 2016, to August 3, 2017.  ECF No. 21 at PageID # 130, ¶ 10.  The policy includes the following liability coverage:

> Subject to the terms, conditions and limitations of this policy, **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury** or **property damage** arising from an **occurrence** to which this policy applies, and is covered by this part of the policy.
>
> **We** may investigate or settle any claim or suit for covered damages against an **insured person**.  If an **insured person** is sued for these damages, we will provide a defense with counsel of **our** choice, even if the allegations are groundless, false or fraudulent.  **We** are not obligated to pay any claim or judgment after **we** have exhausted **our** limit of liability.

ECF No. 21-4 at PageID # 188.  In turn, the policy defines "bodily injury" as

> physical harm to the body, including sickness or disease, and resulting death, except that bodily injury does not include:
> a) any venereal disease;
> b) Herpes;
> c) Acquired Immune Deficiency Syndrome (AIDS);
> d) AIDS Related Complex (ARC);
> e) Human Immunodeficiency Virus (HIV);
> or any resulting symptom, effect, condition, disease or illness related to (a) through (e) listed above.

*Id.* at PageID # 171.[1]  The policy defines "property damage" as "physical injury to or destruction of tangible property, including loss of its use resulting from such physical injury or destruction." *Id.* at PageID # 172.  And it defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury** or **property damage**." *Id.*

The homeowners policy also contains exclusions from coverage, including the following:

> **We** do not cover any **bodily injury** or **property damage** intended by, or which may reasonably be expected to result from the intentional or criminal acts or omissions of, any **insured person**.  This exclusion applies even if:
>
> a)  such **insured person** lacks the mental capacity to govern his or her conduct;
> b)  such **bodily injury** or **property damage** is of a different kind or degree than intended or reasonably expected; or

---

[1] The policy contains an amendment to its definition of "bodily injury" as follows:

> In addition, **bodily injury** does not include any symptom, effect, condition, disease or illness resulting in any manner from:
> a) lead in any form;
> b) asbestos in any form;
> c) radon in any form; or
> d) oil, fuel oil, kerosene, liquid propane or gasoline intended for, or from, a storage tank located at the **residence premises.**

ECF No. 21-4 at PageID # 213.

> c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.
>
> This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of a crime.

*Id.* at PageID # 188.

## B.   The Personal Umbrella Policy

The Rosfelds are also named insureds under an Allstate personal umbrella policy ("PUP") issued by Allstate for a policy period from September 28, 2016, to September 28, 2017.  ECF No. 21 at PageID # 130 ¶ 12.  The PUP provides excess liability insurance for covered claims.  *See* ECF No. 21-5 at PageID # 219.  Specifically, it states that:

> **Allstate** will pay damages which an **insured person** becomes legally obligated to pay because of **bodily injury, personal injury** or **property damage**, subject to the terms, conditions and limits of this policy.  **Bodily injury, personal injury** and **property damage** must arise from a covered **occurrence**.  **We** will not pay any punitive or exemplary damages, fines and penalties.

*Id.* at PageID # 230.  And, regarding a defense, it states that:

> **Allstate** will defend an **insured person** sued as the result of an **occurrence** covered by this policy.  **We** will not defend any **insured person** against any claim for punitive or exemplary damages.

*Id.* at PageID # 232.

In turn, the PUP defines relevant terms "occurrence," "bodily injury,"

"personal injury," and "property damage" as follows:

"**Occurrence**" means an accident during the policy period, including continued and repeated exposure to substantially the same general harmful conditions during the policy period, resulting in **bodily injury**, **personal injury** or **property damage**.

"**Bodily injury**" means:
a)  physical harm to the body, including sickness, disease, disability or death resulting from physical harm to the body;
b)  shock, mental anguish or mental injury.

"**Bodily injury**" does not include:
a)  any venereal disease;
b)  Herpes;
c)  Acquired Immune Deficiency Syndrome (AIDS);
d)  AIDS related complex (ARC); or
e)  Human Immunodeficiency Virus (HIV);

or any related or resulting symptom, effect, condition, disease or illness related to (a) through (e) above.

"**Personal injury**"—means damages resulting from:
a)  false arrest; false imprisonment; wrongful detention;
b)  wrongful entry; invasion of rights of occupancy;
c)  libel; slander; humiliation; defamation of character; invasion of rights of privacy.

Fines and penalties imposed by law are not included.

"**Property damage**" means physical harm to or destruction of tangible property, including loss of its use resulting from such physical harm or destruction.

6

*Id.* at PageID ## 227–28.

Finally, the PUP contains the following relevant exclusions from coverage:

This policy will not apply: . . . .

12. To **bodily injury**, **personal injury** or **property damage** intended by, or which may reasonably be expected to result from, the intentional or criminal acts or omissions of any **insured person**. This includes any **bodily injury**, **personal injury** or **property damage** arising out of a violation of a penal law or ordinance committed by or with the consent or knowledge of an **insured person**. This exclusion applies even if:

a) such **insured person** lacks the mental capacity to govern his or her conduct;
b) such **bodily injury** or **property damage** is of a different kind or degree than that intended or reasonably expected; or
c) such **bodily injury** or **property damage** is sustained by a different person than intended or reasonably expected.

This exclusion applies regardless of whether or not such **insured person** is actually charged with, or convicted of, a crime.
. . . .

16. To any **bodily injury**, **personal injury or property damage** arising from any contract or agreement, whether written or oral.
. . . .

19. To any claim in which an **insured person** has concealed or misrepresented any material fact or circumstance.

*Id.* at PageID ## 230–32.

## C.   The Underlying Action, *Wilson v. Rosfeld*, Civ. No. 21-00115 JAO-RT (D. Haw. filed Feb. 24, 2021)

On February 24, 2021, Randall Wilson, as Trustee of the Wilson Family Trust Dated August 4, 2008 ("Wilson"), brought the underlying complaint in *Wilson v. Rosfeld*, Civ. No. 21-00115 JAO-RT, against the Rosfelds, alleging counts for (1) fraud, (2) negligence, (3) violations of Hawaii Revised Statutes ("HRS") § 480-2, (4) intentional infliction of emotional distress, (5) negligent infliction of emotional distress ("NIED"), (6) breach of contract, (7) unjust enrichment, (8) promissory estoppel, and (9) constructive trust.  *See* ECF No. 21-3. Wilson's suit seeks general, special, and punitive damages based on the Rosfelds' alleged failure to disclose prior flooding and plumbing issues during a December 2016 sale of a residence on Kauai from the Rosfelds to Wilson.  *Id.* at PageID ## 144, 154.

Specifically, in the underlying complaint, Wilson alleges that, on December 19, 2016, the Rosfelds issued a Hawaii real property disclosure statement to Wilson that purportedly made false representations and/or omitted material facts regarding various issues with the residence.  Those representations

included that there were no sewage, drainage, water-related, or grading problems on the property; no damage to structures from flooding or leaks; no defects in, or repairs or replacements to, the foundations or slabs; and no defects in, or repairs or replacements to, interior walls, baseboards or trim, despite the Rosfelds having experienced such issues during their ownership.  ECF No. 21 at PageID # 129, ¶ 4 (citing ECF No. 21-3 at PageID ## 140–42).  Wilson alleges that he sustained injuries and damages as a result of the Rosfelds' alleged false representations and/or omissions.  *Id.* at PageID # 130, ¶ 8 (citing ECF No. 21-3 at PageID ## 145–54).

Wilson further alleges that, in fact, the Kauai property has a history of drainage problems dating back to around 2006 or 2007, which the Rosfelds knew or should have known about when completing the disclosure statement.  ECF No. 21-3 at PageID # 142.  For example, Howard Rosfeld had allegedly told a neighbor in 2011 that the neighbor should "probe the [neighbor's] property for ground water before building his home because [Rosfeld] had experienced ground water problems during the construction of his home and needed to make drastic changes to both his drainage and septic systems."  *Id.* at PageID # 143.

There were other alleged problems with flooding or seepage into the basement, purportedly damaging floors, walls, and baseboards, and which led the

Rosfelds to make a claim with Allstate in 2014 under their flood and homeowners insurance policies (for which they received a payment). *Id.* at PageID ## 143–44. In February 2014, the Rosfelds allegedly hired a firm to "perform water mitigation or water restoration services." *Id.* at PageID # 144. And, ultimately, the Rosfelds allegedly "failed, refused, and/or neglected to disclose the drainage and water infiltration/intrusion/seepage/flooding problems and the facts surrounding [them]" to Wilson, when the Rosfelds sold the property to him in 2016 and gave the allegedly improper disclosure statement. *Id.*

**D.   Allstate Defends Under a Reservation of Rights, and Files the Current Action**

After the underlying suit was filed on February 24, 2021, the Rosfelds tendered defense of the suit to Allstate. ECF No. 21-2 at PageID # 136–37. On May 6, 2021, Allstate agreed to participate in defending the Rosfelds against the underlying suit, with a full reservation of rights under the homeowners policy and the PUP. *Id.* Specifically, in a coverage letter addressed to the Rosfelds (care of their counsel), Allstate stated that "any activity on our part, including any investigation or settlement which we may undertake, and the defense we undertake on your behalf in the above-reference suit, does not constitute a waiver of any of our rights to disclaim or limit coverage," ECF No. 21-6 at PageID # 241, and that:

> We are reserving our right to later disclaim any obligation under the Policies, and assert a defense of no coverage because the claims in the above-reference suit may not involve property damage caused by an occurrence; and/or may fall within the Policies' exclusions for intentional or criminal acts; damage to property owned by an insured; damage relating to contract; and claims relating to concealment or misrepresentation.  Allstate also reserves the right to assert other defenses to coverage that may become apparent through further investigation or analysis.

*Id.* at PageID # 242.

Accordingly, Allstate filed the present suit on June 9, 2021, seeking "a binding declaration that Allstate has no duty to defend and/or indemnify the Rosfelds with respect to the claims asserted against them in the Underlying Lawsuit or for any claims that may arise out of the subject matter alleged in [*Wilson*]."  ECF No. 1 at PageID # 13.

On July 20, 2021, the Rosfelds filed a counterclaim against Allstate, alleging (1) breach of contract, (2) bad faith, (3) unjust enrichment, (4) promissory estoppel, and (5) unfair or deceptive acts or practices under HRS § 480-2.  ECF No. 8-1 at PageID ## 33–35.

Meanwhile, "Allstate has continued to defend [the Rosfelds] in [*Wilson*] under the subject Policies while it pursues the instant Declaratory Judgment Action regarding its rights and obligations under the Policies."  ECF No.

21 at PageID # 131 (Allstate's Concise Statement of Facts, ¶ 17); *see also* ECF No. 25-2 at PageID # 325 (Rosfelds' Response to Allstate's Concise Statement of Facts, accepting Allstate's statement).  Allstate also states that it "will continue with [the Rosfelds'] defense until it obtains a judicial order that it has no obligation to do so," ECF No. 21 at PageID # 131, ¶ 17, and the Rosfelds do not dispute that statement, *see* ECF No. 25-2 at PageID # 325.

Allstate now moves for summary judgment, *see* ECF No. 20, both affirmatively as to its claim for declaratory relief, and defensively as to the counterclaims against it.  Under Local Rule 7.1(c), the court decides the Motion without a hearing.

## III.  DISCUSSION

### A.    Hawaii Principles for Interpreting Insurance Contracts

Substantive Hawaii law applies in this declaratory relief action, which is based upon diversity of citizenship.[2]  *See, e.g.*, *State Farm Fire & Cas. Co. v. RK Wooten*, 2014 WL 5149201, at *3 (D. Haw. Oct. 14, 2014) ("As to the merits of State Farm's claim, federal jurisdiction in this action is proper under 28 U.S.C. § 1332 based upon diversity of citizenship, and as a result, Hawaii substantive

---

[2] There is no dispute that jurisdiction is proper under 28 U.S.C. § 1332.  Plaintiff is an Illinois corporation with a principal place of business in Northbrook, Illinois; Defendants are alleged to be, at all relevant times, Hawaii residents and citizens.  *See* ECF No. 1 at PageID # 2.  Over $75,000 is in controversy.  *Id.*

law applies in determining whether State Farm has a duty to defend and indemnify [an insured].”); *see also* ECF No. 21-4 at PageID # 209 (choice of law clause in the Rosfelds’ homeowners policy, stating that Hawaii law governs claims or disputes related to the policy unless an occurrence happens outside Hawaii).

Under Hawaii law, “[e]very insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy, and as amplified, extended, restricted, or modified by any rider, endorsement or application attached to and made a part of the policy.”  HRS § 431:10-237.  Courts thus look to the language of the insurance policy to determine the scope of an insurer’s duties.  *See*, *e.g.*, *Sentinel Ins. Co. v. First Ins. Co. of Haw.*, 76 Haw. 277, 287, 875 P.2d 894, 904 (1994); *see also Hawaiian Ins. & Guar. Co. v. Fin. Sec. Ins. Co.*, 72 Haw. 80, 87, 807 P.2d 1256, 1260 (1991) (“In the context of insurance coverage disputes, we must look to the language of the insurance policies themselves to ascertain whether coverage exists, consistent with the insurer and insured’s intent and expectations.”).

“In Hawaii, the terms of an insurance policy are to be interpreted according to their plain, ordinary, and accepted sense in common speech.” *Burlington Ins. Co. v. Oceanic Design & Constr., Inc.*, 383 F.3d 940, 945 (9th Cir. 2004).  Insurance policies must nevertheless be construed “in accordance with the

reasonable expectations of a layperson." *Hawaiian Isle Adventures, Inc. v. N. Am. Capacity Ins. Co.*, 623 F. Supp. 2d 1189, 1194 (D. Haw. 2009) (citing *Dawes v. First Ins. Co. of Haw.*, 77 Haw. 117, 121, 883 P.2d 38, 42 (1994)).  Insurance contracts are "contracts of adhesion" and "must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer." *Guajardo v. AIG Haw. Ins. Co.*, 118 Haw. 196, 202, 187 P.3d 580, 586 (2008) (quoting, with omissions, *Dairy Rd. Partners v. Island Ins. Co.*, 92 Haw. 398, 411–12, 992 P.2d 93, 106–07 (2000)).

An insurance company's duty to defend is broader than its duty to indemnify and "arises wherever there is the mere potential for coverage." *Commerce & Indus. Ins. Co. v. Bank of Haw.*, 73 Haw. 322, 326, 832 P.2d 733, 735 (1992).  "In other words, the duty to defend 'rests primarily on the *possibility* that coverage exists.  This possibility may be remote but if it exists[,] the [insurer] owes the insured a defense.'"  *Dairy Rd. Partners*, 92 Haw. at 412, 992 P.2d at 107 (alterations in original) (quoting *Standard Oil Co. of Cal. v. Hawaiian Ins. & Guar. Co.*, 65 Haw. 521, 527, 654 P.2d 1345, 1349 (1982)).

In determining whether an insurer has a duty to defend, Hawaii courts apply the "complaint allegation rule," where

> [t]he focus is on the alleged claims and facts.  The duty to defend "is limited to situations where the pleadings have

14

> alleged claims for relief which fall within the terms for
> coverage of the insurance contract. 'Where pleadings fail
> to allege any basis for recovery within the coverage
> clause, the insurer has no obligation to defend.'"

*Burlington Ins. Co.*, 383 F.3d at 944–45 (quoting *Hawaiian Holiday Macadamia*

*Nut Co. v. Indus. Indem. Co.*, 76 Haw. 166, 169, 872 P.2d 230, 233 (1994)). "In

determining whether coverage exists under a liability policy, Hawaii courts do not

look at the way a litigant states a claim, but rather at the underlying facts alleged in

the pleadings." *Allstate Ins. Co. v. Miller*, 732 F. Supp. 2d 1128, 1134 (D. Haw.

2010) (citing *Bayudan v. Tradewind Ins. Co.*, 87 Haw. 379, 387, 957 P.2d 1061,

1069 (Haw. Ct. App. 1998)) (other citation omitted); *see also Dairy Rd. Partners*,

92 Haw. at 417, 992 P.2d at 112 ("[W]hen the *facts* alleged in the underlying

complaint unambiguously exclude the possibility of coverage, conclusory

assertions contained in the complaint regarding the legal significance of those facts

(such as that the facts as alleged demonstrate 'negligent' rather than 'intentional'

conduct) are insufficient to trigger the insurer's duty to defend.").

Moreover, "where the insured tenders his or her defense in a lawsuit

in which the complaint does not clearly and unambiguously assert a covered claim,

the insurer, as a precondition to refusing the tender on the ground that there is no

possibility of coverage, must nevertheless conduct a reasonable investigation to

ensure that the facts of the case do not obligate it to defend the insured." *Dairy Rd.*

15

*Partners*, 92 Haw. at 414–15, 992 P.2d at 109–10.  "[A]n insurer must look beyond the effect of the pleadings and must consider any facts brought to its attention or any facts which it could reasonably discover in determining whether it has a duty to defend. . . . The possibility of coverage must be determined by a good-faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation."  *Id.* (quoting *Standard Oil Co.*, 65 Haw. at 527, 654 P.2d at 1349).

When an insurer seeks a declaration at summary judgment that it has no duty to defend, it has the burden of proving that there is "no genuine issue of material fact with respect to whether a *possibility* exist[s]" that the insured will incur liability for a claim covered by the policy.  *Id.* at 412, 992 P.2d at 107.  In other words, an insurer must prove that it would be impossible for an adverse party to prevail against the insured in the underlying lawsuit, on a claim covered by the Policy.  *See id*. at 412–13, 992 P.2d at 107–08.

"Unlike a coverage provision, an exclusion is read narrowly."  *Gemini Ins. Co. v. ConstRX Ltd.*, 360 F. Supp. 3d 1055, 1068 (D. Haw. 2018).  "The insurer has the burden of establishing the applicability of any exclusion."  *Id.* "[W]hen insurance policies contain exclusions for intentional conduct and

expected injuries, those exclusions are limited." *Weight v. USAA Cas. Ins. Co.*, 782 F. Supp. 2d 1114, 1128 (D. Haw. 2011).

**B.     Application of Insurance Principles**

Allstate has met its burden at this summary judgment stage to demonstrate that there is no dispute of material fact that it has no duty to defend or indemnify the Rosfelds under either the homeowners policy or the PUP. *See, e.g.*, *Dairy Rd. Partners*, 92 Haw. at 412, 992 P.2d at 107 (reiterating duty to defend and indemnify principles of Hawaii insurance law); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (describing summary judgment standards under Federal Rule of Civil Procedure 56). Although an insurer's duty to defend arises whenever a mere potential for indemnification exists, *see Dairy Rd. Partners*, 92 Haw. at 412, 992 P.2d at 107, Allstate has identified several independent grounds—based on undisputed facts—for a declaration from this court that Allstate owes no coverage duties. That is, there is no potential for indemnification to trigger a contractual duty for Allstate to defend the Rosfelds in the *Wilson* suit.

**1.     *Wilson* alleges no "bodily injury"**

The homeowners policy defines "bodily injury" as "physical harm." ECF No. 21-4 at PageID # 171. The underlying complaint alleges no facts

indicating that the Rosfelds' actions or omissions potentially caused physical harm to Wilson.  At most, it contains allegations of negligent infliction of emotional distress, but does not describe any facts whereby the emotional distress could be "physical" harm.  Thus, the allegations cannot potentially trigger coverage for "bodily injury."  *See State Farm Fire & Cas. Co. v. Ramos*, 2007 WL 9711108, at *7 (D. Haw. Sept. 7, 2007) ("[T]he definition of bodily injury in the Homeowners Policy requires physical injury. [The underlying plaintiff] does not claim her emotional distress flowed from any physical injury.  Any bodily injury claim under the Homeowners Policy fails on this ground alone."); *Allstate Ins. Co. v. Hui*, 57 F. Supp. 2d 1039, 1044–45 (D. Haw. 1999) (granting summary judgment on coverage question in favor of insurer where the emotional distress claims "[did] not allege any sort of bodily injury" and where there were no allegations of "physical injury to property or a person resulting from the [insured's] conduct").

### 2.  *Wilson alleges only economic damages, not "property damage"*

Similarly, there is no potential for coverage based on the "property damage" clause, because *Wilson* does not involve "property damage" as that term is defined in the insurance policies.  The homeowners policy defines "property damage" as "physical injury to or destruction of tangible property," and there are no such allegations in *Wilson*.  Rather, Wilson allegedly incurred economic (not

property) damages—expenses incurred by the Rosfelds for an improper or inadequate disclosure statement, such as costs to repair the property.  *See* ECF No. 21-3 at PageID # 145 (alleging "[t]o date, Plaintiff has spent approximately $53,000.00 on mitigation services and repairs. . . .  The estimated cost of the remaining repairs is over $100,000.00").  There is no covered property damage because the allegedly inadequate disclosures did not cause damage to the property—and especially damages to the Kauai property that predated the 2016 sale.  *See, e.g.*, *State Farm v. Jenkins*, 2009 WL 10677270, at *9 (D. Haw. May 14, 2009) ("[A] claim that the Defendants failed to disclose . . . conditions of the premises (which predated the sale of the property) is not an allegation of tangible damage to property.  Rather, non-disclosure allegations are claims for economic loss relating to the property's value not covered by the policies." (quotation marks and citations omitted)); *State Farm Fire & Cas. Co. v. Chung*, 882 F. Supp. 2d 1180, 1194–95 (D. Haw. 2012) (concluding that an alleged failure to disclose material defects during a sale did not constitute property damage under homeowners policy); *State Farm Fire & Cas. v. Scott*, 2007 WL 7698845, at *11 (D. Haw. Jan. 24, 2007) (finding no coverage for an underlying failure-to-disclose action, reasoning in part that "the nondisclosure could not have caused the [undisclosed] water damage" and thus "[t]he economic loss for which the

19

[underlying plaintiffs] are suing the [insureds] is not covered ['property damage'] by either Policy").

The court recognizes that decisions from this District, interpreting Hawaii law, have found a potential for covered property damage where an underlying complaint alleged "negligent repair" that "exacerbated" (after a sale) undisclosed property damage.  *See RLI v. Thompson*, 2010 WL 1438925, at *5 (D. Haw. Apr. 12, 2010), and *State Farm Fire & Cas. Co. v. Thompson*, 2010 WL 2017101, at *9 (D. Haw. May 20, 2010).  But Wilson makes no allegations akin to "negligent repair."  Such claims would be independent of claims arising out of the real estate contract and its disclosure obligations.  *See State Farm v. Wimberly*, 877 F. Supp. 2d 993, 1002 (D. Haw. 2012) (finding no covered property damage, distinguishing the *Thompson* case because the underlying complaint "alleges the [insureds] should have known that the wall was in danger of collapse and thus negligently failed to disclose its condition," but did not "allege that the wall itself was repaired negligently and that such a repair caused further [property] damage").

Specifically, the underlying complaint alleges that, after Wilson moved into the residence, he discovered "numerous cracks in the concrete slab (many of which appear to have been covered with concrete caulk or liquid filler)," ECF No. 21-3 at PageID # 144.  It also alleges that "[s]ince [Wilson] moved onto

20

the Property, in April 2017, the sewer system has backed up at least three times and water has flooded, infiltrated, or seeped into the basement at least four times." *Id.* at PageID # 142.  There is no claim—as in the *Thompson* case—that a negligent repair exacerbated or caused property damage *after* the sale occurred.  The "negligence" claims in *Wilson* are based on the Rosfelds' failure to disclose the repairs, not that the repairs were negligent and caused further property damage. *See Wimberly*, 877 F. Supp. 2d at 1001–02 (discussing the distinction).  The descriptions in *Wilson* of the Rosfelds' previous repairs to the property were made to demonstrate that the Rosfelds *knew* about the problems and still did not disclose them.  Thus, the allegations in *Wilson* do not trigger coverage for "property damage."

### 3. There was no "occurrence"

Moreover, even if the underlying complaint could be construed as potentially involving "bodily injury" or "property damage," Allstate owes no coverage duties because such injury was not the result of an "occurrence," as that term is used in the homeowners policy.  The policy unambiguously defines an "occurrence" as "an accident."  ECF No. 21-4 at PageID # 172.  And, in this context, an "accident" is determined from the insured's perspective.  *See Hawaiian Holiday Macadamia Nut Co.*, 76 Haw. at 170, 872 P.2d at 234.

21

Here, in the the underlying complaint Wilson alleges facts indicating that the Rosfelds' actions or omissions were entirely intentional, not accidental. Wilson alleges that the Rosfelds knew about flooding and plumbing defects—for example, having warned a neighbor about them, and having made an insurance claim for certain damages—prior to selling the property, and yet failed to disclose those material conditions.  Indeed, Wilson alleges that the Rosfelds *admitted* their failure "to fully and accurately disclose" such problems, and have failed to pay for repairs.  *See* ECF 21-3 at PageID # 145.

Although the underlying complaint includes counts for negligence and NIED, the corresponding alleged facts indicate wholly *intentional* conduct based on a breach of contractual duties related to the sale of the residence.[3]  Under established interpretations of Hawaii law, such claims are not an "occurrence" under these types of liability policies.  *See, e.g.*, *Burlington*, 383 F.3d at 948–49 (affirming a finding of no coverage even though "certain allegations in the homeowners' counterclaim [were] couched in terms of negligence," where the

---

[3] The court looks to the underlying facts to determine coverage, not merely at how they are labeled.  *See, e.g.*, *Miller*, 732 F. Supp. 2d at 1134 ("In determining whether coverage exists under a liability policy, Hawaii courts do not look at the way a litigant states a claim, but rather at the underlying facts alleged in the pleadings."); *Dairy Rd. Partners*, 92 Haw. at 417, 992 P.2d at 112 ("[C]onclusory assertions contained in the complaint regarding the legal significance of [alleged] facts (such as that the facts as alleged demonstrate 'negligent' rather than 'intentional' conduct) are insufficient to trigger the insurer's duty to defend.").

counterclaim alleged a breach of a *contractual* duty, reasoning that "[i]n Hawaii, an occurrence 'cannot be the expected or reasonably foreseeable result of the insured's own intentional acts or omissions'" (quoting *Hawaiian Holiday Macadamia Nut Co.*, 76 Haw. at 170, 872 P.2d at 234)).  *See also, e.g.*, *Chung*, 882 F. Supp. 2d at 1190 (reiterating that "[c]ourts in this district have repeatedly held that claims which arise solely because of a contractual relationship do not result in an occurrence that could be covered by the type of policies at issue here") (citation and internal editorial marks omitted); *Dongbu v. Watson*, 2016 WL 4033096, at *3 (D. Haw. July 27, 2016) ("It is well-established that claims which arise solely because of an alleged breach of contractual duties do not arise from an occurrence or accident under Hawai'i law."); *id.* at *4 (finding no coverage where "it is clear from the allegations [of the underlying complaint] that the negligent misrepresentation claim here arose from the [insured's] alleged nondisclosure of material information regarding the Property, and that the negligent misrepresentation claim is inextricably intertwined with the sales contract"); *Wimberly*, 877 F. Supp. 2d at 1000 (finding no duty to defend because claims arising out of a breach of contract are not covered).

In short, because the *Wilson* complaint does not potentially involve an "occurrence," Allstate owes no coverage duties.

23

### 4.    *Coverage is excluded*

What's more, Allstate also owes no duty to defend because the homeowners policy's intentional-act exclusion precludes coverage for damages that were "intended by, or which may reasonably be expected to result from the intentional . . . acts or omissions" of an insured.  ECF No. 21-4 at PageID # 188. This exclusion applies for the same reasons that there was no "occurrence"—the alleged acts or omissions were knowing and intentional, and damages would be "reasonably . . . expected to result" from those alleged acts or omissions.[4]

### 5.    *No coverage under the PUP*

Allstate also owes no coverage duties under the PUP for largely the same reasons it owes no coverage duties under the homeowners policy.  Among other conditions, the PUP also requires an "occurrence" to trigger coverage, and the PUP's definition of occurrence is nearly identical to that in the homeowners policy (requiring an "accident" causing "bodily injury" or "property damage").  It follows that there is no occurrence, bodily injury, or property damage under the PUP's terms.

---

[4] The court interprets this exclusion, which is stated in terms of "reasonableness," under an objective standard.  *See AIG Prop. Cas. Co. v. Anenberg*, 2020 WL 4607839, at *7 n.3 (D. Haw. Aug. 11, 2020).

Moreover, the PUP also contains several applicable exclusions. First—as with the homeowners policy—the PUP includes an intentional-acts exclusion for damages that were "intended by, or which may reasonably be expected to result from, the intentional . . . acts or omissions of" an insured.  ECF No. 21-5 at PageID # 231.  This exclusion applies for the same reason that it applies in the homeowners policy.  Second, the PUP contains an exclusion for damages "arising from any contract or agreement, whether written or oral."  *Id.* at PageID # 232.  This exclusion plainly applies because the underlying action arises out of the Rosfelds' residential-sales transaction and the real property disclosures made to Wilson.  Third, the PUP excludes coverage for "any claim in which an insured person has concealed or misrepresented any material fact or circumstance." *Id.*  This exclusion plainly applies to *Wilson*'s fraud and misrepresentation claims alleging that the Rosfelds "intentionally made false representations of material fact" during the sale of the property.  ECF No. 21-3 at PageID # 145.

In short, the PUP provides no coverage.

### 6.    *Other Claims in* **Wilson**

Lastly, under either policy, the Rosfelds do not specifically dispute that, by statute, Allstate owes no duty to cover punitive damages.  *See* HRS § 431:10-240 ("Coverage under any policy of insurance issued in this State shall

25

not be construed to provide coverage for punitive or exemplary damages unless specifically included.").  And neither policy "specifically included" coverage for punitive or exemplary damages.  Indeed, the PUP specifically excludes such coverage.  *See* ECF No. 21-5 at PageID # 230.

Moreover, as for Wilson's claim for equitable relief, it is well established that "[l]iability policies provide coverage for damages owed by the insured," and thus "equitable claims for restitution or disgorgement are not covered."  *CIM Ins. Corp. v. Midpac Auto Cntr., Inc.*, 108 F. Supp. 2d 1092, 1102 (D. Haw. 2000) (citing 2 A. Windt, *Insurance Claims and Disputes* § 11.06 (3d ed. 1995)).  In the absence of any other covered claim, Allstate therefore owes no duties to defend against Wilson's claims for punitive damages or equitable relief.

## C.    Allstate is Entitled to Summary Judgment as to the Counterclaims

Having found no coverage duties, the court easily concludes—on the factual record before the court—that Allstate is entitled to summary judgment as to the Rosfelds' counterclaims against Allstate.  The Rosfelds' counterclaim for breach of contract fails because it is now established that Allstate has no coverage duties and has otherwise fulfilled its contractual duties.  The counterclaims for promissory estoppel and unjust enrichment fail for the same reason.

As for bad faith, "[u]nder Hawaii law, 'an insurer may be liable for bad faith for the improper conduct of the defense of its insured even though it is ultimately determined that the insurer had no duty to defend or indemnify under the terms of the policy.'" *CIM Ins. Corp. v. Masamitsu*, 74 F. Supp. 2d 975, 988 (D. Haw. 1999) (alterations omitted) (quoting *Delmonte v. State Farm Fire & Cas. Co.,* 90 Haw. 39, 55, 975 P.2d 1159, 1175 (1999)).  But here, there is no evidence of bad faith.  To the contrary, the evidence points only to Allstate having done everything in good faith.  That is, the Rosfelds produced no evidence of bad faith to create a question of fact at this summary judgment stage.  *See, e.g.*, *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (explaining that a party opposing summary judgment has a burden to "come forward with 'specific facts showing that there is a *genuine issue for trial*'" (quoting Fed. R. Civ. P. 56)). There is, for example, no evidence of unreasonable delay in providing coverage. Allstate has been defending the Rosfelds in *Wilson* for a considerable period of time (that case was filed almost eighteen months ago), and states that it will continue to do so unless and until it receives a declaration that no duties are owed. *See* ECF No. 21 at PageID # 131 ¶ 17.

The Rosfelds point out that they have incurred expenses and stress in defending this declaratory relief action.  *See* ECF No. 26-2 at PageID # 395.  But,

even so, nothing suggests that this declaratory relief action was filed in bad faith.
It is customary for insurers to defend under a reservation of rights and to
concurrently file a declaratory relief action where questions of coverage arise. *See,
e.g.*, *Nautilus Ins. Co. v. Lexington*, 132 Haw. 283, 293, 321 P.3d 634, 644 (2014)
("[Filing a declaratory relief action] enables an insurer to establish in a court action
whether it must defend.  This permits an insurer to determine coverage issues,
allowing the insurer to address the limits of its duty to defend without risking a
later finding that it acted in bad faith.") (citation and internal quotation marks
omitted).  *See also id.* ("[D]efending under a non-waiver agreement or reservation
of rights, permits an insured to satisfy its duty to defend the policyholder while
simultaneously preserving its ability to rely later on any available policy defenses
that might have vitiated the duty.") (citation and internal quotation marks omitted).
Allstate provided appropriate notice to the Rosfelds that it was invoking these
rights in its May 6, 2021 letter to the Rosfelds and their counsel.  *See* ECF No. 21-
6 at PageID # 241.

   In short, Allstate is entitled to a grant of summary judgment as to the
counterclaim for bad faith.  Likewise, there is simply no evidence that Allstate
committed an unfair or deceptive trade act or practice under HRS § 480-2, making
summary judgment against that counterclaim appropriate as well.

## IV.  __CONCLUSION__

For the foregoing reasons, Plaintiff Allstate Insurance Company's Motion for Summary Judgment, ECF No. 20, is GRANTED.  There being no other claims or counterclaims, the Clerk of Court shall close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, August 4, 2022.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Allstate Ins. Co. v. Rosfeld,* Civ. No. 21-00269 JMS-RT, Order Granting Plaintiff's Motion for Summary Judgment, ECF No. 20